# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-IA-01371-SCT

*WILLIAM P. KNIGHT, II*

*v.*

*ERIC WOODFIELD*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/10/2009 |
| TRIAL JUDGE: | HON. ROBIN ALFRED MIDCALF |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY COUNTY COURT |
| ATTORNEY FOR APPELLANT: | CHAD PATRICK FAVRE |
| ATTORNEY FOR APPELLEE: | JOHN VERNON WOODFIELD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED AND REMANDED - 01/06/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Eric Woodfield filed a complaint alleging alienation of affections against William Knight in the County Court of Harrison County. Knight filed a motion to dismiss for lack of personal jurisdiction pursuant to Mississippi Rule of Civil Procedure 12(b)(2), which the county court denied. We granted Knight's petition for an interlocutory appeal. However, having now considered the issues raised, we affirm the judgment of the county court.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.    Eric Woodfield and his wife, Kristina Dokka, resided in Long Beach, Mississippi, from July 2006 until their separation in April 2007. During this time, Dokka commuted from her home in Mississippi to her job in Louisiana. Dokka was a coworker of William Knight, a Louisiana resident.

¶3.    Woodfield claims to have noticed a substantial change in his marital relationship with Dokka in January 2007. He noticed that Dokka had become very protective of her cellular phone, would not answer text messages around him, and would use the couple's computer for extended periods of time while she thought he was asleep. Woodfield also claims that his sexual relationship with Dokka diminished during this time. This activity prompted Woodfield to access Dokka's cellular phone,[1] where he discovered numerous text messages from Knight as well as partially nude photos of Dokka which had been sent to Knight. Woodfield also examined Dokka's phone records and discovered that in February 2007, she and Knight had talked for 120 minutes and had exchanged 131 text messages. In March 2007, Dokka spoke with Knight for 860 minutes and the two exchanged 807 text messages.

¶4.    Knight and Dokka also exchanged numerous emails during this time. One email sent by Knight to Dokka stated, "I refuse to feel guilty about falling for you," and "[y]ou enter marriage by choice and you can leave it by choice anytime you choose." Dokka also stated in an email that she "had fallen" for Knight.

---

[1]Dokka's cellular phone is registered in Louisiana and has a Louisiana telephone number.

¶5.    Upon discovering these communications between Knight and Dokka, Woodfield sent Knight an email requesting that Knight stop pursuing Dokka because Woodfield was trying to salvage his marriage. Knight continued communicating with Dokka despite Woodfield's request.

¶6.    Knight admitted he was aware that Dokka and Woodfield were married and that Dokka lived with Woodfield in Mississippi. Knight claims that he and Dokka were never physically together in Mississippi while she was married to Woodfield.

¶7.    Woodfield and Dokka separated on April 4, 2007, and were divorced on July 16, 2007. After the separation, Dokka moved to Louisiana. She and Knight are now married and living in Louisiana. Woodfield is still a resident of Mississippi.

¶8.    On January 15, 2008, Woodfield filed a complaint against Knight in the County Court of Harrison County alleging alienation of affections. In his complaint, Woodfield alleged that he had suffered loss of consortium as a proximate result of Knight's actions. Knight filed his first motion to dismiss for lack of personal jurisdiction on March 14, 2008, but the trial court denied this motion due to incomplete discovery. On July 9, 2009, Knight filed a second motion to dismiss, again alleging lack of personal jurisdiction. In his response to Knight's second motion, Woodfield claimed that the communications between Knight and Dokka, while she was physically present in Mississippi, had resulted in his loss of consortium, the damage of which had occurred entirely in Mississippi. The trial court denied Knight's second motion to dismiss, finding that the injury, if any, potentially occurred within

3

Mississippi due to the communications between Dokka and Knight while Dokka was located in Mississippi.

¶9.     The trial court granted Knight permission to seek an interlocutory appeal on this matter because of "the advancements in technology and the unique nature of the tort of alienation of affections." We granted Knight's petition for an interlocutory appeal, but upon consideration of the issues raised, we now affirm the judgment of the trial court, finding that Knight's contacts with Mississippi were sufficient to establish personal jurisdiction for Woodfield's claim of alienation of affections.

**DISCUSSION**

¶10.    Knight raises three issues on interlocutory appeal. For the purposes of this opinion, we will address the following two issues: (1) whether a nonresident defendant's acts of communicating by email, text, and cellular phone with the plaintiff's wife, which the plaintiff claims to have caused the tort of alienation of affections, constitute the minimum contacts necessary to exercise *in personam* jurisdiction over the nonresident defendant; and (2) whether exercising personal jurisdiction in this case would offend traditional notions of fair play and substantial justice.[2]

¶11.    "We review jurisdictional issues de novo. When considering jurisdictional issues, the Court sits in the same position as the trial court, 'with all facts as set out in the pleadings or

---

[2]The third issue is whether a nonresident defendant committed the tort of alienation of affections when the plaintiff filed and received a divorce on the grounds of irreconcilable differences. This is an issue for the trial court. Further, Knight's Petition for Interlocutory Appeal did not include this issue.

4

exhibits, and may reverse regardless of whether the error is manifest.'" *Horne v. Mobile Area Water & Sewer Sys.,* 897 So. 2d 972, 975 (Miss. 2004) (citing *Rayner v. Raytheon Co.*, 858 So. 2d 132, 133 (Miss. 2003)).

> **I. WHETHER A NONRESIDENT DEFENDANT'S ACTS OF COMMUNICATING BY EMAIL, TEXT, AND CELLULAR PHONE WITH THE PLAINTIFF'S WIFE, WHICH THE PLAINTIFF CLAIMED TO HAVE CAUSED THE TORT OF ALIENATION OF AFFECTIONS, CONSTITUTE THE MINIMUM CONTACTS NECESSARY TO EXERCISE *IN PERSONAM* JURISDICTION OVER THE NONRESIDENT DEFENDANT.**

¶12. This Court must conduct a two-step analysis when determining whether a Mississippi court may exercise personal jurisdiction over a nonresident defendant. *Horne*, 897 So. 2d at 976. First, we must determine whether the nonresident defendant is amenable to suit in Mississippi by virtue of our long-arm statute. Miss. Code Ann. § 13-3-57 (Rev. 2002); *Id.* (citing *McDaniel v. Ritter*, 556 So. 2d 303, 307 (Miss. 1989)). If so, then we must determine whether the nonresident defendant is amenable to suit in our state consistent with the Due Process Clauses of the state and federal constitutions. *Horne*, 897 So. 2d at 976 (citing *McDaniel*, 556 So. 2d at 308).

*A. Mississippi's Long-Arm Statute*

¶13. Mississippi's long-arm statute states, in relevant part:

> Any nonresident person . . . who shall commit a tort *in whole or in part in this state* against a resident or nonresident of this state . . . shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57 (Rev. 2002) (emphasis added).

5

¶14.  In order to determine whether our long-arm statute confers jurisdiction in this case, we must decide whether Knight has committed a tort, *in whole or in part*, in Mississippi.  We previously have held that our long-arm statute extends to nonresident defendants who commit the tort of alienation of affections in Mississippi.  ***Camp v. Roberts***, 462 So. 2d 726, 727 (Miss. 1985), *overruled on other grounds by* ***Saunders v. Alford***, 607 So. 2d 1214 (Miss. 1992).  The elements of the tort of alienation of affections are: "'(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss.'" ***Fitch v. Valentine***, 959 So. 2d 1012, 1025 (Miss. 2007) (quoting ***Saunders***, 607 So. 2d at 1215).  In his complaint, Woodfield alleged that Knight's actions of texting, calling, and emailing Dokka while she was in Mississippi were the direct and proximate cause of the alienation of affections.  Taken as true, these allegations are sufficient to show that Knight committed the tort, *in whole or in part*, in Mississippi.  Accordingly, the requirements of our long-arm statute are satisfied.

### B.  Minimum Contacts

¶15.  The second step of the analysis is to determine whether the Due Process Clause allows Mississippi courts to exercise jurisdiction over the nonresident defendant.  ***Horne***, 897 So. 2d at 976 (citing ***McDaniel***, 556 So. 2d at 308).  Federal law controls this inquiry.  ***Id.***  The Due Process Clause of the Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property without due process of law . . . ."  U.S. Const. amend. XIV.  Regarding the Due Process Clause and personal jurisdiction, the United States Supreme Court has held:

6

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). "A defendant has 'minimum contacts' with a state if 'the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Horne*, 897 So. 2d at 979 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

¶16.  In *Horne*, this Court analyzed whether a nonresident defendant's actions that originated in another state, but were directed at Mississippi and caused harm within the State, constituted minimum contacts for the purposes of the Fourteenth Amendment. *Id*. at 976. In *Horne*, the Board of Water and Sewer Commissioners of the City of Mobile (BWSC) released water from a reservoir in Alabama, which subsequently damaged real and personal property in Mississippi. *Id.* at 974. The property owners filed suit against the BWSC, the Mississippi Power Company, the Mobile Area Water and Sewer System, the City of Mobile, and John Does A through J, alleging negligence, strict liability, nuisance, trespass, and outrageous conduct. *Id.*  The City of Mobile and the BWSC both filed motions to dismiss pursuant to Rule 12(b)(2). *Id.*  The chancellor granted the motions, and the property owners appealed to this Court, arguing that Mississippi courts had *in personam* jurisdiction over the nonresident defendants. *Id.*  We reversed the chancery court, finding that the nonresident defendants were amenable to *in personam* jurisdiction in Mississippi. *Id.*

7

¶17. When applying the minimum-contacts rule to the facts in *Horne*, this Court found that "the City and [BWSC] 'purposefully directed' their activities toward Mississippi property owners, by opening the spillway to its maximum capacity." *Id.* at 979. Further, referring to the deposition testimony of an engineer for the BWSC, this Court noted that "[t]here is no question that the City and [BWSC] knew the water would flow into Mississippi." *Id.* Based on these findings, we determined that the nonresident defendants in *Horne* were amenable to *in personam* jurisdiction in Mississippi courts. *Id.*

¶18. Similar to the nonresident defendants in *Horne*, Knight's actions originated in a neighboring state. From Louisiana, Knight called, sent text messages to, and emailed Dokka. Importantly, Knight knew that Dokka resided with Woodfield in their marital home in Mississippi. Knight and Dokka exchanged more than 900 text messages in the course of two months. The two spent 980 minutes speaking to each other on the phone during the same time period. Knight and Dokka also exchanged numerous emails, chronicling their developing relationship.

¶19. We find that Knight's emails, phone calls, and text messages are sufficient "minimum contacts" with Mississippi for the purposes of our personal-jurisdiction analysis. *Int'l Shoe Co.*, 326 U.S. at 316. Knight "purposefully directed" his actions at a resident of the forum, namely Dokka, and the current litigation results from the alleged injuries that "arose out of or relate to" Knight's actions. *Burger King Corp.*, 471 U.S. at 472. In the current litigation, Woodfield alleges that Knight's actions were the direct and proximate result of Woodfield's injuries, specifically the alienation of Dokka's affections. Again, for the sake of emphasis,

8

the tort of alienation of affections consists of three elements: (1) wrongful conduct by the defendant; (2) loss of affection or consortium; and (3) causal connection between the wrongful conduct and the loss. *Fitch*, 959 So. 2d at 1025. Taking Woodfield's allegations in his pleadings as true, which we must do in considering this issue, Knight's phone calls, emails, and text messages constitute the wrongful conduct that led to Woodfield's alleged injuries. Thus, Knight's actions constitute sufficient minimum contacts, requiring us now to analyze the second critical issue before us.

## II. WHETHER EXERCISING JURISDICTION IN THIS CASE WOULD OFFEND THE TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.

¶20. Our final step in determining whether Knight is amenable to suit in Mississippi is to determine whether maintenance of the suit offends traditional notions of "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co*., 326 U.S. at 320). This analysis depends on: "(1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interests in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental social policies." *Id.*

¶21. In applying these considerations to today's case, we find that Mississippi has a strong interest in adjudicating the dispute. Woodfield, a Mississippi resident, allegedly was injured and his marriage ended because of Knight's alleged actions. Mississippi has an interest in providing a forum for its residents who are injured by nonresident defendants. *See Estate of Jones v. Phillips*, 992 So. 2d 1131, 1142 (Miss. 2008). Mississippi's interest is enhanced

9

because Louisiana does not recognize the tort of alienation of affections, making Mississippi the only viable forum for Woodfield's claims. Woodfield also has a strong interest in adjudicating the dispute in Mississippi. By maintaining the suit in Mississippi, Woodfield may obtain convenient and effective relief for his claim. Further, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is not hampered by maintenance of the present suit in Mississippi. Knight is a resident of Louisiana, and maintenance of the suit in Mississippi will not create an extreme burden on him. Finally, this Court has held that the purpose of the tort of alienation of affections is the "'protection of the love, society, companionship, and comfort that form the foundation of marriage . . . .'" *Fitch*, 959 So. 2d at 1019 (citing *Bland v. Hill*, 735 So. 2d 414, 417 (Miss. 1999)). Permitting claims for alienation of affections protects the marriage relationship and provides a remedy to those who have suffered loss of consortium as a result of the conduct of others. *Id.* at 1020. Thus, we find that the states would have a shared interest in furthering this fundamental social policy. We therefore find that maintenance of this suit in Mississippi will not offend "traditional notions of fair play and substantial justice."

## CONCLUSION

¶22.    In sum, the County Court of Harrison County has personal jurisdiction over Knight for the purposes of adjudicating Woodfield's claim of alienation of affections against Knight. If Woodfield suffered injuries due to Knight's actions of emailing, calling, and sending text messages to Woodfield's wife, such injuries were suffered by a Mississippi resident in his home state. These actions satisfy the Mississippi long-arm statute as well as the Due Process

Clauses of our state and federal constitutions. Thus, we find that the county court judge did not err in denying Knight's motion to dismiss; therefore, the judgment of the county court is affirmed, and this case is remanded to the County Court of Harrison County for further proceedings consistent with this opinion.

¶23. **AFFIRMED AND REMANDED.**

**GRAVES, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND PIERCE, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶24. Because I would find that Woodfield fails to show that Knight had sufficient contacts with Mississippi and that this State cannot constitutionally exercise personal jurisdiction over Knight, I respectfully dissent.

¶25. "Minimum contacts" must occur between the defendant and the forum state and not just between the defendant and a resident of the forum state. *See McDaniel v. Ritter*, 556 So. 2d 303, 309 (Miss. 1989). The plaintiff must prove that the defendant's contacts were "expressly aimed" at the forum state. *Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Ultimately, the facts here do not show that Knight's conduct was ever purposefully directed towards Mississippi.

¶26. While Dokka and Woodfield moved to Mississippi, Dokka commuted to Louisiana, where she worked for the same employer as Knight. All in-person contacts between Dokka and Knight took place in Louisiana. All telephone conversations and text messages between

11

them were conveyed by or to Dokka's Louisiana cell-phone number. In fact, Woodfield stated that the some 900 text messages exchanged were from Dokka to Knight. The fact that Dokka may have accessed e-mails in Mississippi is of no moment, as e-mails can be accessed anywhere. The substance of the e-mails also suggests that Dokka independently chose to leave the marriage. *See Estate of Jones v. Phillips*, 992 So. 2d 1131, 1141 (Miss. 2008) (finding minimum contacts where nonresident doctor's telephone call to resident had induced resident to take specific course of action rather than to act independently).

¶27. Woodfield has not provided a sufficient basis to show that Knight purposefully directed any conduct toward this state. *Horne v. Mobile Area Water & Sewer Sys.*, 897 So. 2d 972, 979 (Miss. 2004). Since no minimum contacts exist, this State cannot exercise personal jurisdiction. Accordingly, I would reverse the lower court's judgment denying Knight's motion to dismiss.

**CHANDLER, J., JOINS THIS OPINION.**