Robert Lucas THOMAS, Individually and as Next Friend and Natural Guardian of R.L.T., a Minor, H.H.T., a Minor, C.S.T., a Minor, A.C.T., a Minor, and S.H.T., a Minor, Plaintiffs

v.

Daniel G. SKRIP, Defendant.

No. 3:11CV690TSL–MTP.

United States District Court, S.D. Mississippi, Jackson Division.

May 18, 2012.

Amanda Jane Proctor, William R. Wright, Wright Law Firm, PA, Jackson, MS, for Plaintiffs.

Charles E. Griffin, Butler, Snow, O'Mara, Stevens & Cannada, PLLC, Ridgeland, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Daniel G. Skrip to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Plaintiff Robert (Rob) Lucas Thomas, individually and as next friend and natural guardian of minors R.L.T., H.H.T., C.S.T., A.C.T. and S.H.T., has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion should be denied.

Plaintiff Rob Thomas, a resident of Jackson, Mississippi, filed this action against defendant Daniel G. Skrip, a resident of Boston, Massachusetts, alleging that Skrip engaged in a relationship with plaintiff's wife, Denise Lynn Thomas, which resulted in the alienation of Denise's affections toward plaintiff. The complaint alleges (and it is not disputed) that on February 4, 2011, while on a trip to New Orleans with friends, Denise Thomas met defendant Skrip in the lobby of the hotel

where both were staying. Skrip, an attorney from Boston, apparently was in New Orleans on business. Subsequently, after Mrs. Thomas had returned to her home in Jackson, Mississippi and the defendant to Boston, the two began emailing each other and talking and texting over the phone. Not long thereafter, on March 26, 2011, Mrs. Thomas left the marital home following twenty-two years of marriage; she returned briefly for a period, from May 8, 2011 to July 2, 2011, but during that time maintained a separate bedroom in the home. A month later, on August 2, 2011, plaintiff filed for divorce on the ground of uncondoned adultery. Then, on September 23, 2011, Mr. Thomas, individually and as next friend and guardian of his and Denise's five children, filed the present action alleging claims of alienation of affections, intentional infliction of emotional distress and negligent infliction of emotional distress based on allegations that Skrip "regularly encouraged, promoted, and/or demanded that Denise maintain an emotional and sexual relationship with him"; that in fact, there resulted an emotional and sexual relationship between them; that defendant's actions caused the breakdown of the Thomases' marriage culminating in Mr. Thomas's instigation of divorce proceedings; and that as a result, plaintiffs "have lost or suffered irreparable damage to [their] conjugal, parental, and familial relationships."

■■■ A federal court sitting in diversity may exercise personal jurisdiction only to the extent allowed by a state court under applicable state law. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir.1997), *cert. denied*, 522 U.S. 1048, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998). "A state court or a federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Id.* at 281 (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir.1989)). It is the plaintiff's burden to establish jurisdiction. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir.1999).

■■■ As is pertinent to this case, Mississippi's long-arm statute confers personal jurisdiction over "[a]ny nonresident person . . . who shall commit a tort in whole or in part in this state against a resident or nonresident of this state. . . ." Miss.Code Ann. § 13-3-57.[1] Under this provision, "personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir.2006).

■■■ The Mississippi Supreme Court has summarized the tort of alienation of affections, stating that "where a husband is wrongfully deprived of his rights to the 'services and companionship and consortium of his wife,' he has a cause of action 'against the one who has interfered with his domestic relations.' . . . The husband might then sue for . . . alienation of affec-

---

1. Mississippi's long-arm statute states:

 Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

 Miss.Code Ann. § 13-3-57. Only the tort prong is implicated in this case.

tions...." *Camp v. Roberts*, 462 So.2d 726, 727 (Miss.1985) (citation omitted).[2] The elements of the tort of alienation of affections are: " '(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss.' " *Fitch v. Valentine*, 959 So.2d 1012, 1025 (Miss.2007) (quoting *Saunders v. Alford*, 607 So.2d 1214, 1215 (Miss.1992)).[3] In this case, it is undisputed that defendant was never physically present within the state of Mississippi. Nevertheless, plaintiff submits that personal jurisdiction is proper under the long-arm statute because he suffered loss, or injury in Mississippi as a direct result of defendant's sending hundreds of text messages and emails and making hundreds of phone calls to Denise Thomas in Mississippi which caused her to abandon the marital relationship. *See Saunders v. Alford*, 607 So.2d 1214, 1215 (Miss.1992) (stating that claim for alienation of affections "accrues when 'the alienation or loss of affection is finally accomplished' ") (quoting *Overstreet v. Merlos*, 570 So.2d 1196 (Miss.1990)). "If the injury occurs in Mississippi, the tort is committed, at least in part, in the state, and the requirements of the long-arm statute are satisfied." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270–71 (5th Cir.2006); *see also Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir.1996)(holding that "[a] tort is complete when, and personal jurisdiction lies where, the actual injury occurs."). "The tortfeasor's pres-

ence in Mississippi is not required; causing an injury that occurs in the state is sufficient." *Seiferth*, 472 F.3d at 271.

Defendant argues in response that all of his alleged wrongful conduct, consisting of electronic and telephonic communications with Denise Thomas that are alleged to have lured her from the marital relationship, originated from outside the state of Mississippi, *see Fitch v. Valentine*, 959 So.2d 1012, 1025 (Miss.2007) (explaining that "persuasion, enticement, or inducement which causes or contributes to the abandonment is a necessary component of 'wrongful conduct' " element); and he submits that while plaintiff may have felt the *consequences* of this alleged tortious conduct in the state of Mississippi, the actual *injury* occurred elsewhere. *See Jobe*, 87 F.3d at 753 (explaining that "[i]n determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences," since "consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur"). In the court's opinion, defendant's position is foreclosed by *Knight v. Woodfield*, 50 So.3d 995 (Miss.2011).

In *Knight*, the Mississippi Supreme Court, confronted with essentially the same scenario as here, held that the plaintiff's allegations that the defendant's text-

---

**2.** Although it is one of only a few remaining states that continue to recognizes the tort of alienation of affections, the Mississippi Supreme Court has expressly declined to abolish the tort based on its view that doing so "would, in essence, send the message that we are devaluing the marriage relationship." *Bland v. Hill*, 735 So.2d 414, 418 (Miss.1999); *see also Fitch v. Valentine*, 959 So.2d 1012, 1020 (Miss.2007) ("[I]n the interest of protecting the marriage relationship and providing a remedy for intentional conduct which causes a loss of consortium, this Court declines the

invitation to abolish the common law tort of alienation of affections in Mississippi.").

**3.** Although plaintiff has also alleged claims for intentional and negligent infliction of emotional distress, the factual predicate for all his claims is essentially the same. Thus, while the court recognizes that defendant contends otherwise, the court is of the opinion that defendant's relevant conduct and contacts with Mississippi are the same for all these torts.

ing, calling and emailing the plaintiff's wife from outside the state while plaintiff's wife was in Mississippi were the direct and proximate cause of the alienation of affections were sufficient to show that the defendant committed the tort of alienation of affections, in whole or in part, in Mississippi. *Id.* at 999.[4]

■ As in *Knight*, the issue in *Bailey v. Stanford*, Civil No. 3:11–cv–00040–NBB–SSA, 2012 WL 569020, *1 (N.D.Miss. Feb. 21, 2012), was likewise whether the plaintiff had established a basis for personal jurisdiction over a nonresident paramour who did not have a physical presence within Mississippi prior to the time the plaintiff's husband abandoned his marital home but where the plaintiff presented evidence that the defendant engaged in interstate calls and text messages of a sexual, amorous and affectionate nature with plaintiff's then-husband while he was married to the plaintiff and living in their marital home in Mississippi. 2012 WL 569020, at *2. And as in *Knight*, the court concluded there was personal jurisdiction since "the alleged injury, the breakup of the Baileys' marriage, occurred in Mississippi." *Knight*, 50 So.3d at 997–98. *See also Cooper v. Shealy*, 140 N.C.App. 729, 537 S.E.2d 854, 856 (N.C.Ct.App.2000) (finding North Carolina's long-arm statute authorized person-

al jurisdiction since plaintiff's injury, the destruction of her husband's love and affection, occurred within the state and was allegedly caused by defendant's solicitations via emails and telephone calls to plaintiff's home in the state). Clearly, the injury to plaintiff herein is his wife's leaving the marital relationship, which occurred in Mississippi, allegedly as a result of defendant's persuasion, inducement and enticement. Jurisdiction is thus proper under the long-arm statute.

■ The Due Process Clause of the Fourteenth Amendment serves to limit the power of a state to assert personal jurisdiction over a nonresident. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Due Process Clause "requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir.2004) (citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990), and *International Shoe Co. v. Wash-*

---

4. Defendant argues that *Knight v. Woodfield*, 50 So.3d 995 (Miss.2011), is distinguishable from the present case because the wife and paramour in *Knight* had regular, in-person contacts for months before the marriage became irrevocably broken, whereas he and Mrs. Thomas had no personal contact from the time they first met in New Orleans and the time she left her husband and children. *See Knight*, 50 So.3d at 995 ("Dokka commuted from her home in Mississippi to her job in Louisiana. Dokka was a co-worker of William Knight, a resident of Louisiana."). In the court's opinion, the facts in *Knight* are not materially distinguishable from the facts here presented. The court in *Knight* obviously did not consider the personal contact between

Knight and Mrs. Woodfield in Louisiana as having any bearing on the jurisdiction analysis; instead, jurisdiction was founded solely on *Knight's emails and texts sent to, and phone calls made to Mrs. Woodfield in Mississippi.*

Defendant acknowledges that if the court concludes that *Knight* is not distinguishable, then it is binding on this court on the issue whether the long-arm statute is satisfied (though not on the federal due process issue). *See Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir.1997) (federal court applies state's long-arm statute "as interpreted by the state's courts"), *cert. denied*, 522 U.S. 1048, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998).

*ington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "The 'constitutional touchstone' of the inquiry to determine if personal jurisdiction can be exercised is whether the defendant 'purposefully established minimum contacts in the forum State.' " *Seiferth,* 472 F.3d at 271 (quoting *Asahi Metal Ind. Co. v. Super. Ct.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). "Where a defendant 'has continuous and systematic general . . . contacts' with the forum state, the court may exercise 'general jurisdiction' over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.' " *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir.2009) (citations omitted). Indeed, 'a defendant's single act can be sufficient to confer personal jurisdiction if that act gives rise to the claim being asserted. *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 871–72 (5th Cir.2000). As Skrip lacks continuous and systematic contacts with the forum, a specific jurisdiction analysis applies. The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: " '(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.' " *Id.* (quoting *Seiferth,* 472 F.3d at 271).

The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court." The defendant "must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.' "

*Id.* (citations omitted). *See also Trinity Indus., Inc. v. Myers & Assocs., Ltd.,* 41 F.3d 229, 231 (5th Cir.1995)("[A]n individual who purposefully directs his activities to forum state residents and derives benefits therefrom should be answerable in the forum for the consequences of his activities; 'the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.' "), *cert. denied,* 516 U.S. 807, 116 S.Ct. 52, 133 L.Ed.2d 17 (1995); *Bailey,* 2012 WL 569020, at *5 (" 'Although personal jurisdiction does not lie when the defendant cannot control vulnerability to suit,' it does lie where the defendant assumed and continued his contacts with the forum state.") (quoting *Trinity Indus.,* 41 F.3d at 231).

In *Bailey,* the court concluded that since the "defendant initiated contacts to Mississippi, and . . . frequently responded to contacts initiated by [the plaintiff's husband] (some of them from Mississippi) [as] part of ongoing communication with [her husband]" and such contacts "were not 'random, fortuitous,' 'attenuated,' or the result of unilateral activity of a third party," and since "[t]he defendant knew at the time that she initiated these contacts that [the plaintiff's husband] was married to the plaintiff, a Mississippi resident," then "[t]he alleged injurious effects of her communications with [the plaintiff's wife] on the plaintiff were foreseeable." *Id.* "As such, the defendant could reasonably anticipate being haled into court in Mississippi in an action that relate[d] to her contacts with the forum." *Id.* (citing *Latshaw v. Johnston,* 167 F.3d 208, 213 (5th Cir. 1999)).

In *Knight*, the court also held that the nonresident paramour's emails, phone calls and text messages to the plaintiff's wife in Mississippi constituted the wrongful conduct that allegedly led to the plaintiff's alleged injury, i.e., the alienation of his wife's affections, and were sufficient "minimum contacts" with Mississippi for the purposes of its personal jurisdiction analysis. *Id.* at 1000. The court, noting first that the defendant knew that plaintiff's wife resided with the plaintiff in their marital home in Mississippi, reasoned that "Knight 'purposefully directed' his actions at a resident of the forum, namely [the plaintiff's wife], and the current litigation results from the alleged injuries that 'arose out of or relate to' Knight's actions." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). *See also Ramm v. Rowland*, 658 F.Supp. 705, 706 (S.D.Tex. 1987) (holding that the defendant's alleged acts of intentionally contacting the plaintiff's wife by phone to encourage her to leave her husband which created foreseeable impact on the plaintiff in Texas satisfied purposeful availment of Texas jurisdiction).

▮ Skrip suggests that he cannot be found to have purposefully directed his activities at *Mississippi* since he did not know when he sent the emails and text messages and made the phone calls to Denise Thomas that she was physically located in Mississippi. On this point, his argument is two-fold. First he suggests that he did not actually *know* that Denise Thomas lived in Mississippi; he only *understood* from what she told him that she

lived in Mississippi. This is nonsense. It is undeniably clear from the record evidence that defendant fully *believed* Denise Thomas when she told him she lived in Mississippi.

▮ He next argues that in light of the mobile nature of the technology involved in electronic communications via email, text or cell phone, it cannot fairly be said that he directed his activities toward *Mississippi* rather than toward a *resident* of Mississippi, who need not have been present in Mississippi to receive his various communications. *See Dunn v. Yager*, 58 So.3d 1171, 1186 (Miss.2011) (emphasizing that minimum contacts "must be between the defendant and the forum state, not simply between the defendant and a resident of the forum state") (citing *Admin. of Tulane Educ. Fund v. Cooley*, 462 So.2d 696, 703 (Miss.1984)). Defendant notes that Mrs. Thomas's access to her cell phone, text messages and email were not in any way bound to Mississippi; she could have accessed them from anywhere she happened to be, and he submits that the fact that his communications were largely accessed by Mrs. Thomas in Mississippi is merely fortuitous. The court is unpersuaded. While the court has not been provided with the full text of the emails between Skrip and Mrs. Thomas during the relevant time frame,[5] the parts of the emails which have been provided clearly demonstrate that defendant had reason to know, based on information provided by Mrs. Thomas in her emails to him, e.g., regarding her activities on a given day, that she was physi-

---

**5.** Defendant submits that communications which post-dated March 26, 2011 are not properly considered as part of the jurisdiction equation since that is the date plaintiff has identified as the date on which Mrs. Thomas left the marital home. He also argues that there is no indication of any wrongdoing in

any of the communications prior to March 26, 2011. He claims, that is, that until was not until after Mrs. Thomas abandoned the marriage that his relationship with her became more than just friends. A review of the content of the emails belies this assertion.

cally present in Mississippi when at least several of the emails were sent.[6]

 In light of his numerous calls, texts and emails to Denise Thomas in Mississippi, the court readily concludes that Skrip had the requisite minimum contacts to satisfy the requirements of due process in this court's exercise of personal jurisdiction,[7] which brings the court to the final prong of the due process inquiry: whether the exercise of personal jurisdiction is fair and reasonable. Defendant bears the burden of proof on this issue, and in the words of the Fifth Circuit, "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 759 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)); *see also Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir.1999) (stating that "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant"). The court uses five factors in evaluating whether the exercise of jurisdiction would be unfair or unreasonable: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.*

 The court in *Bailey*, considering the fairness factors, stated the following:

Mississippi has a strong interest in this litigation in light of its interest in providing for an effective means of redress for its citizens. Mississippi also has an interest in protecting its laws, as it has refused to abolish the tort of alienation of affections.... The plaintiff also has a strong interest in adjudicating the dispute in Mississippi. Here, the claim of the plaintiff can be resolved conveniently, whether for or against her, whereas this cause of action may not exist in

---

6. Defendant appears to suggest in his rebuttal memorandum that since he was unaware prior to Mrs. Thomas's departure from the marital home on March 26, 2011 that Mississippi recognizes a cause of action for alienation of affections, then he could not have reasonably anticipated being haled into court in Mississippi based on his contacts with Mrs. Thomas. *See Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring) (defendant must have "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign"). Obviously, however, the concept of purposeful availment for personal jurisdiction purposes does not include any requirement that a nonresident have subjective awareness that his actions are tortious under the law of the forum. Rather, "[t]h[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts[.]'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). *Cf. Endress + Hauser, Inc. v. Hawk Measurement Systems*

*Pty. Ltd.*, No. IP 92–440–C, 1993 WL 276949, *3 (S.D.Ind. Feb. 5, 1993) (explaining that "a litigant who has purposefully availed itself of the privilege of conducting business in the forum state has a reasonable anticipation or 'fair warning' of potential personal jurisdiction; this precludes a litigant from being haled into a jurisdiction as a result of 'random,' 'fortuitous,' or 'attenuated' contacts") (citing *Burger King* ). Otherwise, even a nonresident who had continuous and systematic contacts within the forum, including a regular physical presence, could avoid personal jurisdiction simply by asserting ignorance of the forum state's laws.

7. The Fifth Circuit has held that "[a] plaintiff bringing multiple claims *that arise out of different forum contacts* of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir.2006). Although Skrip contends otherwise, plaintiff's multiple claims herein do not arise out of different forum contacts. *See supra* note 3.

other jurisdictions. The states have a shared interest in having their state laws enforced.

The court recognizes the burden placed on the defendant, an Ohio resident, as a result of this case being tried in Mississippi. However, the defendant's burdens do not present the type of compelling reasons necessary to justify a finding that the exercise of jurisdiction over the defendant is contrary to notions of fair play and substantial justice.

*Bailey,* 2012 WL 569020, at *8. These observations apply equally in this case. Especially given Mississippi's determination to retain a cause of action for alienation of affections, Mississippi has an interest in protecting its residents' rights in their marital relationships and providing them a convenient forum for redress. Plaintiff has an interest in securing relief as quickly and as efficiently as possible, and there is no basis for concluding that efficient resolution of the case would be disserved by resolution in Mississippi. Defendant's generalized difficulty in traveling to Mississippi is not a burden violative of due process. *See McFadin,* 587 F.3d at 764.

Accordingly, based on all of the foregoing, the court finds that the court may properly exercises personal jurisdiction over Skrip with respect to plaintiff's tort claims.

Therefore, it is ordered that defendant's motion to dismiss is denied.