RANDOLPH, Presiding Justice,
dissenting:
¶ 47. Were the contacts between Nordness and Phillip purposeful? Yes. Were Nordness’s contacts with a resident of Mississippi? Yes. Did the complaint allege that a tort was committed, in whole or in part, in Mississippi? Yes. Our law requires no more to exercise in personam jurisdiction, other than to. conduct a due process analysis of fair play and substantial justice. Today’s outcome achieves neither.
¶ 48. A tort is complete when the injury occurs. Once an injury occurs in this State, “... the tort is committed, at least in part, [ ] and [in] personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court.” Internet Doorway, Inc. v. Parks, 138 F.Supp.2d 773, 776 (S.D.Miss.2001) (quoting Smith v. Temco, 252 So.2d 212, 216 (Miss.1971)) (emphasis added).
¶ 49. Once in personam jurisdiction has been established, it must then be determined if the defendant’s due process rights will be violated by continuing in the forum state or if the proceedings should be conducted elsewhere. In Knight v. Woodfield, 50 So.3d 995 (Miss.2011), this Court followed the United States Supreme Court’s longstanding rule:
[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and- substantial justice.
Knight, 50 So.3d at 998. See also Thomas v. Skrip, 876 F.Supp.2d 788, 794-95 (S.D.Miss.2012).
¶ 50. In personam jurisdictional inquiries generally focus on the defendant, especially in cases contesting general jurisdiction. However, in specific jurisdiction, the inquiry is broader. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) (“Plaintiffs residence may well play an important role in determining the propriety of entertaining a suit against the defendant in the forum.”).
Due process has been addressed by courts in so many different ways and defined in so many situations, it would take a lifetime just to read the cases. There is nothing mysterious about the term, however. To most of us its central meaning simply is even handed fairness in legal proceedings.
Mississippi Power Co. v. Goudy, 459 So.2d 257, 270-71 (Miss.1984) (Hawkins, J., specially concurring). Due to the intertwining analysis of the contacts in relation to the claim, the due process examination broadens, not only to the defendant, but to the plaintiff as well, viewing neither in isolation. On one side of the scale is Paige, a resident of Mississippi who was injured in Mississippi. On the -other side is Nordness, a nonresident defendant, who claims that she never knew Phillip or his family *466 lived in Mississippi at any time during their six-year affair.
¶ 51. I cannot join a decision which denies a Mississippi resident her day in court to seek damages for a tort committed, in whole or in part, in Mississippi. A host of similar cases, specifically alienation-of-affections cases where personal jurisdiction was contested, lead me to this conclusion. This Court repeatedly has permitted such suits to proceed, irrespective of the residency of the parties. See Camp v. Roberts, 462 So.2d 726 (Miss.1985) (We held that the trial court had in personam jurisdiction over an alienation-of-affections suit filed in Mississippi by a New York resident against a New York/ New Jersey resident because the tort allegedly was committed in Mississippi.); Knight v. Woodfield, 50 So.3d 995 (Miss.2011) (Mississippi resident filed suit against a Louisiana resident in Mississippi, although the sexual relationship occurred in Louisiana. Court held that, because communications through text messages, telephone calls, and emails occurred in Mississippi, and the injury occurred in Mississippi, that the contacts Knight had with Dokka while she was in Mississippi were sufficient to establish minimum contacts.); Bailey v. Stanford, 2012 WL 569020 (N.D.Miss. Feb. 21, 2012) (A Mississippi resident sued an Ohio resident in Mississippi for alienation of affections, after the plaintiffs husband had contacted a former girlfriend through email, setting up a tryst in Illinois. The Court found that an exercise of personal jurisdiction over the nonresident defendant was proper.); Thomas v. Skrip, 876 F.Supp.2d 788 (S.D.Miss.2012) (Mississippi resident sued his wife’s paramour, a Massachusetts resident, • for alienation of affections. The court found the requirements for personal jurisdiction were satisfied in Mississippi.); Miller v. Provident Advertising and Marketing, Inc., 155 So.3d 181 (Miss.Ct.App.2014) (A suit was initiated by a resident of Tennessee who alleged an injury to her Tennessee marriage by a resident of Florida because the affair occurred in Mississippi. Our Court of Appeals found that a tort had been committed, “at least in part,” in Mississippi, and the minimum-contacts requirements for specific personal jurisdiction were met.).
¶ 52. All of these cases held that personal jurisdiction over a nonresident defendant existed by conducting a two-step analysis: (1) whether Mississippi’s long-arm statute renders the nonresident defendant amenable to suit in this state (Miss.Code Ann. § 13-3-57 (Rev.2012)); and if so, (2) whether exercising in person-am jurisdiction over the nonresident defendant would violate the Due Process Clause of the state and federal constitutions. Knight, 50 So.3d at 998. It is undisputed that a multi-state, multi-year affair existed between Nordness and Phillip. Paige alleges that the loss of her relationship with Phillip occurred in their home state. She further contends that Phillip’s and Nordness’s affair led to the demise of their marriage in Mississippi. Thus, the requirements set forth in Mississippi’s long-arm statute are satisfied.
¶ 53. My reasoning is as follows. First, I discern no error with the trial court’s order denying Nordness’s Motion to Dismiss. The trial court held that it is “fair, just and efficient to exercise personal jurisdiction over [ ] Nordness in this particular action.” I agree.
¶ 54. Second, the majority holds that Nordness’s minimum contacts must have been purposeful with Mississippi. However, in cases involving specific jurisdiction, the purposeful minimum contacts are determined by contacts with residents of the state, not the State. I agree that contacts with the forum, as opposed to with resi *467 dents of the forum, is the proper concern for claims of systematic and continuous contacts for general jurisdiction, as found in International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and the other similar cases cited by the majority. However, this is a case of specific jurisdiction. The United States Supreme Court addressed this distinction in Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1995)
Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this “fair warning” requirement is satisfied if the defendant has “purposefully directed” his activities at residents of the forum, and the litigation results from alleged injuries that “arise out of or relate to” those activities.[44]
Burger King Corp., 471 U.S. at 472, 105 S.Ct. 2174 (internal citations omitted) (emphasis added). Today’s case involves Nordness “purposefully directing her activities at residents of the Mississippi, and this litigation results from alleged injuries that arise out of or relate to those activities.” Nordness acknowledged, in her Memorandum of Law in Support of Defendant’s Motion to Dismiss, that the test for minimum-contacts requirements for specific jurisdiction is as follows:
[wjhere a forum seeks to assert specific jurisdiction over [a nonresident] defendant who has not, consented to suit there ... the defendant [must have] “purposefully directed” [her] activities at residents of the forum, and the litigation results from alleged injuries that “arise out of or relate to” those activities.
(Nordness’s Memorandum of Law in Support of Defendant’s Motion to Dismiss at 7) (quoting Estate of Jones v. Phillips ex rel. Phillips, 992 So.2d 1131, 1140-41 (Miss.2008)) (emphasis added).
¶ 55. “The ‘minimum contacts’ inquiry is fact intensive and no one element is decisive.” Miller, 155 So.3d at 191 (citation omitted). “Purposeful availment” seeks to protect defendants from being subjected to lawsuits in jurisdictions where their contact was “random,” “fortuitous,” or “attenuated.” Burger King Corp., 471 U.S. at 475, 105 S.Ct. 2174, (citing Keeton, 465 U.S. at 774, 104 S.Ct. at 1478; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980)). Nordness has offered no argument that her contacts with Phillip were “random,” “fortuitous,” or “attenuated.” Her contacts were purposeful and intended, not accidental or by chance, whether she knew the contacts were made with a Mississippi resident or not. As the trial court stated in his August 13, 2013, Order, Nordness had:
contacts with the Plaintiffs former husband — which include a countless number of texts, phone calls and emails over a period of approximately six years— [which] were directed at a Mississippi resident while he was present in the State of Mississippi_ While the Defendant may not have been aware that the Plaintiffs former husband and his wife resided in Mississippi during the six-year affair, this Court is not convinced that such ignorance can relieve the Defendant from facing the consequences of her contact with Mississippi [residents] in a Mississippi court.
(Emphasis added and in original).
¶ 56. Last century, in Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 *468 L.Ed.2d 683 (1977), the United States Supreme Court recognized the changes brought about by the automobile. The Shaffer Court addressed out-of-state motorists driving on state highways “by using those highways [had] appointed a designated state official as his agent to accept process.” Shaffer, 433 U.S. 186, 202, 97 S.Ct. 2569. Are we to conclude that all out-of-state motorists who travel within our borders know that their presence on our state’s roads and highways subjects them to the jurisdiction of Mississippi courts? Such lack of knowledge does not defeat the state’s power of jurisdiction over those motorists. See Miss.Code Ann. § 13-3-63 (Rev.2012). Before today, knowledge, or lack thereof, has not been a standalone decisive element of a personal-jurisdiction inquiry. The Court also discussed the necessity of considering advancements in society, noting the need for “moderation of the territorial limits on jurisdictional power” since the invention of automobiles, thus increasing “the incidence of individuals causing injury in States where they were not subject to in person-am actions ...” under previous caselaw. Shaffer, 433 U.S. at 202, 97 S.Ct. 2569.
¶ 57. Just as the Shaffer Court recognized the changes brought about by the automobile, the District Court for the Northern District of Mississippi recognized changes and effects of newer technology:
The modernization of communications systems is not limited to commercial life. As a practical matter, almost all personal telecommunications are also made via mail and wire communications. “A letter or a telephone call may, in a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant.”
Bailey, 2012 WL 569020, at *6 (citation omitted).
¶ 58. Paige had the burden of establishing a Mississippi court’s power to entertain this action. This was accomplished through the long-arm statute. Paige presented evidence of purposeful contacts. Once accomplished, the burden shifted to Nordness to “present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.” Burger King Corp., 471 U.S. at 477, 105 S.Ct. 2174 (emphasis added). This burden shifting is explained by one of our federal district courts:
an individual who purposefully directs his activities to forum state residents and derives benefits therefrom should be answerable in the forum for the consequences of his activities; “the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.”
Bailey, 2012 WL 569020, at *5 (citation omitted) (emphasis added). Nor should Nordness be able to use a due process claim to shield herself from legal obligations that she voluntarily assumed.
¶ 59. What was the relationship between Nordness, the state of Mississippi, and Paige’s cause of action for alienation of affections? Paige asserts Nordness engaged in specific acts of communication to facilitate and perpetuate the affair which caused or contributed to her loss of Phillip’s affections and her emotional distress, which is the gravamen of her claim. Specific-contact activities and communications to and from Mississippi and the resulting trysts planned during these communications all are part and parcel of the present litigation.
¶ 60. Today’s case presents a claim of injury which arose out of and is related to communications through cell phone calls, text messages, and emails. Considering the contacts have been admitted, Paige has *469 a right to seek redress for damages related to those contacts. The United States Supreme Court has made it abundantly clear that “[t]hese contacts between [Nordness] and the residents of this state are important and sufficiently related to the underlying cause of action to foreclose any concern that the constitutional limits of the Due Process Clause are being violated.” Keeton, 465 U.S. at 781, 104 S.Ct. 1473 (Brennan, J., concurring).
¶ 61. The trial court held that Paige met her burden in establishing minimum contacts existed between Nordness and Phillip (a fact conceded by Nordness). The trial court’s holding, Nordness’s own admissions, and this Court’s prior decisions all direct us to consider the final prong — fair play and substantial justice, which the majority posits is unnecessary. As set forth in Knight, this final analysis includes: “(1) the forum state’s interest in adjudicating the dispute; (2) the plaintiffs interests in obtaining convenient and effective relief; (3) the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental social policies.” Knight, 50 So.3d at 1000. Today’s decision does not resolve the controversy. It eliminates the controversy.
¶ 62. Mississippi has a strong interest in adjudicating the dispute, as some communications promoting the affair occurred while Phillip, a Mississippi resident, was in Mississippi, resulting in an alleged injury in Mississippi, to a Mississippi marriage which was dissolved in Mississippi.
A state has an especial interest in exercising judicial jurisdiction over those ,who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfea-sor shall be liable for damages which are the proximate result of his tort.
Miller, 155 So.3d at 193 (citing Restatement (Second) of Conflict of Laios § 36(1) cmt. c (1971)).
¶ 63. Mississippi undoubtably has a strong interest in the marriage, as the marriage was recognized by and protected by its' laws. Further, Mississippi has a strong interest in a marriage that allegedly was injured in the state, bringing forth claims for alienation of affections, and in the eventual demise of a marriage that ended in Mississippi under Mississippi’s laws of divorce. Further, Miller recognized an important state interest. Mississippi chose to enact this state’s long-arm statute to provide its own residents redress against out-of-state defendants who commit torts within the state, evincing a compelling state interest in adjudicating suits where its state’s residents allege an injury in Mississippi. Miller, 155 So.3d at 193; see also Thomas, 876 F.Supp.2d at 793 (Claims for alienation of affections “accrue[ ] when ‘the alienation or loss of affection is finally accomplished.’”) (citation omitted).
¶ 64. Mississippi also will provide the most convenient and effective relief. The record reveals that Nordness lived in Louisiana and North Carolina during the affair and currently resides in Tennessee. Of these states, only North Carolina recognizes the tort of alienation of affections. See N.C.G.S.A. § 52-13 (effective 2009). However, an exercise of personal jurisdiction in North Carolina offers no convenience, considering Nordness no longer resides there and the resulting injury did not occur there. Further, the applicable statute of limitations is three years from the “last act of the defendant giving rise to the cause of action.” Miller, 155 So.3d at 193. As seen in Miller, Paige “... lacks a viable alternative to adjudicate [the] claim *470 ... increasing] Mississippi’s interest in adjudicating this claim.” Id. at 194. Further, because the alleged resulting injury occurred in Mississippi to Paige and her marital relationship with Phillip, witnesses and evidence likely will be found in Mississippi.
¶ 65. Moreover, Nordness’s current residence in the neighboring state of Tennessee would not cause an extreme burden to her because the suit is maintained in Mississippi. See Knight, 50 So.3d at 1001 (“Knight is a resident of Louisiana, and maintenance of the suit in Mississippi will not create an extreme burden on him.”); Miller, 155 So.3d at 194 (“[I]t will be convenient for Miller to have this claim in Mississippi, as it is close to her resident state of Tennessee.”); Bailey, 2012 WL 569020, at *8 (“The court recognizes the burden placed on the defendant, an Ohio resident, as a result of this case being tried in Mississippi. However, the defendant’s burdens do not present the type of compelling reasons necessary to justify a finding that the exercise of jurisdiction over the defendant is contrary to notions of fair play and substantial justice.”); Thomas, 876 F.Supp.2d at 798 (“Defendant’s generalized difficulty in traveling to Mississippi is not a burden violative of due process.”). This Court is not presented with any facts which would show that requiring Nordness to be subjected to jurisdiction in Mississippi would “... hamper the interstate judicial system’s interest in obtaining the most efficient resolution to the controversy.” Miller, 155 So.3d at 194. “Once the plaintiff makes her prima facie showing, ... it becomes the defendant’s burden to convince the court that requiring him or her to defend in the particular forum would create a substantial hardship.” Bailey, 2012 WL 569020, at *3; As we have seen in Knight, Miller, Bailey, and Thomas, requiring a defendant to travel to Mississippi does not present this Court with a compelling reason to find that such travel would create- a substantial hardship, thus violating due process requirements.
¶ 66. Finally, the states have a shared interest in providing relief for individuals who have experienced alienation of affections by advancing a “fundamental social policy!,]” which guards the “foundation of a marriage,” ie., “love, society, [and] companionship.” Fitch v. Valentine, 959 So.2d 1012, 1019 (Miss.2007). Further, “[t]he states have a shared interest in having their state laws enforced.” Thomas, 876 F.Supp.2d at 797-98 (citing Bailey, 2012 WL 569020, at *8).
¶ 67. Thomas relied on the following reasoning provided in Bailey:
Mississippi has a strong interest in this litigation in light of its interest in providing for an effective means of redress for its citizens. Mississippi also has an interest in protecting its laws, as it has refused to abolish the tort of alienation of affections.... The plaintiff also has a strong interest in adjudicating the dispute in Mississippi. Here, the claim of the plaintiff can be resolved conveniently, whether for or against her, whereas this cause of action may not exist in other jurisdictions. The states have a shared interest in having their state laws enforced.
Thomas, 876 F.Supp.2d at 797-98 (citing Bailey, 2012 WL 569020, at *8). As in Knight, Miller, Thomas, and Bailey, this Court is not presented with sufficient “compelling reasons” to deny the exercise of personal jurisdiction over Nordness. The exercise of personal jurisdiction over Nordness is not contrary to notions of fair play and substantial justice, for the State of Mississippi has a paramount interest in the viability of the cause of action of alienation of affections to provide redress for its citizens when the protections of the *471 marital relationship have been compromised. Knight, 50 So.3d at 1000-1001; Miller, 155 So.3d at 193-94; Thomas, 876 F.Supp.2d at 798; Bailey, 2012 WL 569020, at *8.
¶ 68. Therefore, in personam jurisdiction properly can be exercised over Nordness in Mississippi, as this state’s long-arm statute is applicable, sufficient minimum contacts exist for specific jurisdiction, and maintenance of the suit, although inconvenient for Nordness, does not offend traditional notions of fair play and substantial justice. Nordness failed to sustain her burden of showing otherwise.
¶ 69. This Court should affirm the trial court’s denial of the motion to dismiss and affirm the judgment of the trial court, which held that personal jurisdiction over a defendant who committed a tort, in whole or in part, in Mississippi, was proper.
PIERCE, J., JOINS THIS OPINION.

. See Knight, holding that the nonresident defendant must have "... purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.” Knight, 50 So.3d at 999.