DICKINSON, Presiding Justice,
for the Court:
¶ 1. This is an alienation-of-affections lawsuit brought against’ a nonresident paramour over whom our courts have personal jurisdiction under the Mississippi long-arm statute. But because the paramour did not make purposeful minimum contacts with Mississippi that were sufficient to satisfy the Due Process Clause of the Fourteenth Amendment, we reverse the circuit court’s denial of the paramour’s motion to dismiss for lack of personal jurisdiction and we render judgment dismissing the plaintiffs complaint and this action for lack of personal jurisdiction over the paramour.
FACTS AND PROCEDURAL HISTORY
¶ 2. Phillip and Paige Faucheux were a military couple who moved frequently during the early years of their marriage. In early 2002, Phillip got a job as a pilot with FedEx in Memphis, so the couple moved to Southaven, Mississippi — a suburb of Memphis just south of the Tennessee border. Phillip also served as a naval reserve pilot, often training at the Naval Air Station in Belle Chasse, Louisiana. Because of his frequent trips to Louisiana, he kept a Louisiana-registered Mazda pick-up truck parked at the New Orleans airport.[1]
¶ 3. Paige and the couple’s children often accompanied Phillip on his trips, but sometimes they did not. And it was on one such trip to south Louisiana during Carnival Season in January 2004, that Phillip met and began an extramarital affair with Francesca Munne Nordness.
¶ 4. Phillip and Francesca continued the affair while Phillip trained in south Louisiana. Phillip often would drive Francesca around in his Mazda pick-up truck with Louisiana license plates. Francesca never visited Phillip in Mississippi, and Phillip never told Francesca that he lived in Mississippi. Instead, he misled her into believing he actually lived in Memphis. His cell phone had a “901” area code — the area code for the Memphis area — and he sent her packages with a Memphis return address.
¶ 5. In June 2004, Paige discovered that Phillip was having an affair. She did not know Francesca’s identity, and she made it very clear that she blamed Phillip for the affair. Eventually the couple reconciled their marriage, yet Phillip secretly continued his relationship with Francesca in New Orleans.
¶ 6. In October 2004, Francesca moved from New Orleans to Fayetteville, North Carolina, and Phillip stopped seeing her. But several months later in early 2005, Phillip hopped a FedEx flight to North Carolina and showed up unannounced at the hospital where Francesca worked, professing his love for her and begging her to see him again. Francesca agreed.
¶ 7. From 2005 to 2009, Francesca and Phillip continued to rendezvous at locations across the country, including Louisiana, Florida, North Carolina, Nevada, and *457 Colorado — but never Mississippi. And although the two exchanged e-mails, phone calls, and text messages, Francesca never knowingly communicated with Phillip while he was in Mississippi. Phillip also sent Francesca several FedEx packages during this time, but according to Phillip’s uncon-troverted testimony, he always used a Memphis return address.
¶ 8. In December 2009 or early 2010, Paige learned that Phillip was still having affairs, not only with Francesca — whose identity she finally had learned — but also with a fitness instructor in Southaven. Around that same time, apparently for reasons unrelated to the affair, Francesca and her family left North Carolina and moved to Chattanooga, Tennessee.
¶ 9. In March 2010, Francesca emailed Phillip to inform him that Paige had contacted her. Phillip responded by expressing his unflinching love for Francesca, offering to “fly in, hold your hand[,] and stand next to you while you tell [your husband] the truth,” then suggesting that the two of them “fly to MEM, and you can hold my hand while I tell Paige.”[2]
¶ 10. Phillip’s continued infidelity proved too much for Paige and, in August 2010, she was granted an irreconcilable-differences divorce from Phillip. Following the couple’s divorce, Paige — now a resident of Texas — sued Francesca in Mississippi for alienation of affections, intentional and negligent infliction of emotional distress, invasion of privacy, and punitive damages. Francesca immediately challenged the suit by moving the court to dismiss for lack of personal jurisdiction over her.
¶ 11. The circuit judge denied Francesca’s motion to dismiss, stating that “it would be fair, just[,] and efficient to exercise personal jurisdiction over [Francesca] in this particular action.” Francesca timely filed a petition for permission to file an interlocutory appeal in this Court, and we granted her petition.
ANALYSIS
¶ 12. Because Paige filed this tort lawsuit against a nonresident, she bears the burden of establishing that Mississippi courts have personal jurisdiction over Francesca.[3] We first look to the language of Mississippi’s “long-arm statute,” which allows personal jurisdiction where the nonresident defendant commits a tort, in whole or in part, in Mississippi.[4] Here, because Francesca’s actions allegedly broke up Paige’s Mississippi marriage, we find the long-arm statute’s language sufficiently broad enough to bring Francesca within its scope.[5] But the applicability of our long-arm statute does not end the inquiry.[6] We also must determine whether our exercise of personal jurisdic *458 tion would be constitutionally permissible under the United States Constitution’s Fourteenth Amendment.[7]
I. Paige has not established that Francesca made sufficient purposeful minimum contacts with Mississippi for exercising personal jurisdiction over her.
¶ 13. The Fourteenth Amendment’s Due Process Clause prohibits a state’s unrestricted exercise of personal jurisdiction over nonresidents.[8] With respect to the Due Process Clause, we are bound by the interpretations and decisions of the United States Supreme Court,[9] which addressed the issue in International Shoe Co. v. Washington, by stating:
[I]n order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” [10]
¶ 14. So a State’s exercise of personal jurisdiction over a nonresident involves an evaluation of a defendant’s “minimum contacts within the forum state” to see if they are sufficient to “comport with [traditional notions of] ‘fair play and substantial justice.’ ”[11] To begin that process, we first must determine whether “a defendant purposefully established minimum contacts within the forum State.” [12]
¶ 15. Had Paige established that Francesca had engaged in sufficient purposeful minimum contacts with Mississippi, we then would evaluate whether subjecting Francesca to the jurisdiction of our courts would comport with the requirements of fair play and substantial justice. But, as explained below, Paige has utterly failed in her burden of showing Francesca had the constitutionally required purposeful minimum contacts in Mississippi, so our courts may not exercise jurisdiction over her, and it is unnecessary for us to analyze the so-called “fairness factors.”
¶ 16. The dissent cites Burger King Corp. for the proposition that due process may be satisfied where a defendant purposefully directs activities at a resident of *459 the forum, even though the defendant knows nothing about the person’s connections to the forum. We must reject this limited view of Burger King Corp. ’s holding for several reasons.
¶ 17. First, the Court in Burger King Corp. said more than the dissent discloses. The Court made it abundantly clear that the Due Process Clause allows a state court to exercise personal jurisdiction over a nonresident only where the nonresident should reasonably expect that her actions could lead to her being “haled into court” in that state.[13] Applying that requirement to the case before us today, it seems irrefutably illogical to suppose that a person who has an affair in another State with a Mississippi resident — but who is unaware of the person’s Mississippi connections— reasonably could expect her actions could lead to her being “haled into court” in Mississippi. Notably, the dissent does not address this seminal due process requirement found in Burger King Corp., International Shoe Co., Stripling, and numerous other cases addressing due process requirements for personal jurisdiction.
¶ 18. Second, in Walden v. Fiore (discussed in detail below) — a case not cited by the dissent,, even though it is the United States Supreme Court’s most recent pronouncement on specific personal jurisdiction — the Court stated in no uncertain terms that a “ ‘minimum contacts’ analysis looks to the defendant’s contacts with the forum State itself, not the defendant’s contacts with persons who reside there.”[14]
¶ 19. Third, we have not found, and the dissent has not cited, a singlé United States Supreme Court case — or, for that matter, any federal or state supreme court case — that has held a person “purposefully established ‘minimum contacts’ in [a] forum State”[15] where that person did not know, or should not have been aware, he or she was making the contacts in the forum state.
A. United States Supreme Court Personal Jurisdiction Cases and the Requirements of Purposeful Minimum Contacts and Foreseeability
¶ 20. The United States Supreme Court has addressed the limits of a State court’s power to exercise personal jurisdiction over nonresidents in numerous cases, but its opinion in International Shoe Co. still remains the “canonical opinion.”[16] And its “minimum contacts” requirement has been the object of much elaboration in both federal and state courts.
¶ 21. In World Wide-Volkswagen Corp. v. Woodson, the Supreme Court — drawing from and further explaining its pronouncement in International Shoe Co. — stated:
Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State *460 has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause,.acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.[17]
¶ 22. The Court also pointed out that the foreseeability of suffering injury in the forum state, standing alone, is insufficient to establish constitutionally required minimum contacts:
It is argued, however that because an automobile is mobile by its very design and purpose it was “foreseeable” that the [plaintiffs’] Audi would cause injury in Oklahoma. Yet “foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.[18]
¶ 23. In addressing these and other considerations, the Court stated in Burger King Corp. v. Rudzewicz that “the constitutional touchstone remains whether the defendant purposefully established ‘minimum contacts’ in the forum State.”[19] The Burger King Court went on to state:
Although it has been argued that foreseeability of causing injury in another state should be sufficient to establish [minimum] contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a “sufficient benchmark” for exercising personal jurisdiction.[20]
¶ 24. Finally, in Walden v. Fiore, the United States Supreme Court’s most recent pronouncement on specific jurisdiction, the Court made crystal clear that “a defendant’s relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.”[21]
¶ 25. The Court noted that “physical entry into the State — either by the defendant in person or through an agent, goods, mail, or some other means — is certainly a relevant contact,” however:
The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant “focuses on ‘the relationship among the defendant, the forum, and the litigation.’ ” For a State to exercise jurisdiction consistent with due process, the defendant’s suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant to this case.
First, the relationship must arise out of contacts that the “defendant himself” creates with the forum State.
[[Image here]]
Second, our “minimum contacts” analysis looks to the defendant’s contacts with the forum State itself, not the defendant’s contacts with persons who reside there.[22]
¶ 26. The Court went on to explain:
*461 Relying on Calder [v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ], respondents emphasize that they suffered the “injury” caused by petitioner’s allegedly tortious conduct (i.e., the delayed return of their gambling funds) while they were residing in the forum. This emphasis is likewise misplaced. As previously noted, Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdic-tionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant’s conduct connects him to the forum in a meaningful way.[23]
¶ 27. For purposes of a state court’s exercise of personal jurisdiction over a nonresident, these cases make clear the Due Process Clause’s requirement of evidence that the nonresident purposefully— not accidentally or unknowingly — engaged in minimum contacts within the forum state, sufficient to submit himself to the personal jurisdiction of that state’s courts.
¶ 28. The record in this case includes no evidence whatsoever that Francesca ever purposefully made any contact — minimum or otherwise — with Mississippi. She had an affair (never in Mississippi) with a man (a) who worked in Memphis for a Memphis-based corporation; (b) whose cell phone had a Tennessee area code; (c) who sent her packages using a Tennessee return address; (d) who drove a truck with a Louisiana license plate; and (e) who asked her to meet him in “MEM” so they could disclose the affair to his wife.
¶ 29. As the Supreme Court has stated numerous times, due process requires that, for a state court to exercise personal jurisdiction over a nonresident, the person reasonably must expect that his or her actions could lead to him or her being “haled into court” in that state.[24] Thus, Paige must demonstrate the Due Process Clause’s requirement that Francesca “purposefully established ‘minimum contacts’” in Mississippi,[25] and that Francesca should have realized her actions could subject her to the jurisdiction of Mississippi courts. This, Paige has not done.
¶ 30. It is uncontroverted that Francesca never knew of Phillip’s home in Mississippi. There is no evidence in the record to suggest that Francesca knew or should have realized her calls and texts to Phillip’s Tennessee telephone number would be received in Mississippi. And while Francesca certainly should have known her affair with a married man might break up a marriage somewhere, there is nothing in the record to suggest she knew or should have known the marriage would break up in Mississippi.
B. Mississippi Personal Jurisdiction Cases in the Context of Alienation-of-Affections Claims
¶ 31. Our review of United States Supreme Court precedent makes it abundantly clear that our courts cannot constitutionally assert personal jurisdiction over Francesca in this case. And our own jurisprudence supports this holding. In every case where Mississippi courts have exercised personal jurisdiction over non *462 resident paramours, our courts have made it clear that the paramours knew they were engaged in a relationship with a person from Mississippi.
¶32. In Knight v. Woodfield, we held that our courts could exercise personal jurisdiction over a nonresident paramour.[26] But, unlike our case today, the nonresident defendant in Knight was fully aware he was having an extramarital affair with a Mississippi resident whose marital home was in Mississippi.[27] We stated:
A defendant has “minimum contacts” with a state if “the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.”[28]
We also stated:
Importantly, Knight [the defendant] knew that Dokka resided with Woodfield in their marital home in Mississippi.[29]
And in another part of the opinion, we stated:
Knight admitted he was aware that Dak-ka and Woodfield were married and that Dakka lived with Woodfield in Mississippi.[30]
¶ 33. Again, there is no evidence whatsoever that Francesca knew Phillip lived in Mississippi, or that he had a marital home in Mississippi. So Knight is readily distinguishable from the case before us today.
¶ 34. Although federal district court opinions do not serve as binding precedent for this Court, we note that both the Northern and Southern Districts of Mississippi also have found that they could exercise personal jurisdiction over nonresident paramours who knew they were having affairs with Mississippians.[31]
¶ 35. In Thomas v. Skrip, a federal district court in the Southern District found that the court could constitutionally-exercise personal jurisdiction over a nonresident paramour who knowingly made phone calls and sent text messages and, emails to a married woman in Mississippi.[32] In analyzing whether the defendant purposefully established minimum contacts with Mississippi, the court observed that “[i]t is undeniably clear from the record evidence that defendant fully believed [the wife] when she told him she lived in Mississippi,” [33] and that
the parts of the emails which have been provided clearly demonstrate that defendant had reason to know, based on information provided by [the wife] in her emails to [the defendant], e.g., regarding her activities on a given day, that she was physically present in Mississippi when at least several of the emails were sent.[34]
Because the defendant knew the wife lived in Mississippi, his emails, calls, and text messages to her in Mississippi created sufficient minimum contacts with Mississippi.[35]
*463 ¶ 36. Likewise, in Bailey v. Stanford, a federal district court in the Northern District found that a nonresident paramour who called and sent text messages to a married man she knew lived in Mississippi created constitutionally sufficient minimum contacts with Mississippi.[36] The district court observed that
[i]n alienation of affection[s] cases directed against a nonresident defendant, courts have generally found that the defendant possessed] significant minimum contacts with the forum state where the defendant has directed activity toward a state with the intention of alienating the affections of a spouse who lives there.[37]
¶ 37.' The district court then explained why the nonresident defendant possessed significant minimum contacts with Mississippi:
The court is not persuaded by the defendant’s argument that her communications “sent in direct response to communications from James” should not be considered in the court’s jurisdictional analysis. This scenario is not the same as the scenario in Wilson v. Belin, 20 F.3d 644 (5th Cir.1994), as the defendant argues.. In Wilson, the Fifth Circuit found no specific jurisdiction over defendants who sat “unsuspectingly in their respective offices in Indiana and Iowa” and “merely answered one uninitiated and unsolicited phone call.” Id. at 649. Here, the defendant initiated contacts to Mississippi, and she frequently responded to contacts initiated by James (some of them from Mississippi). The defendant’s responses were part of ongoing communication with James and were not “random,” “fortuitous,” “attenuated,” or the result of unilateral activity of a third party. The defendant knew at the time' that she initiated these contacts that James was married to the plaintiff, a Mississippi resident.[38]
¶ 38. Both Thomas and Bailey are readily distinguishable from this case, because there is no evidence that Francesca knew Phillip was, from Mississippi or that she knowingly sent communications to him in Mississippi.
¶ 39. As the Fifth Circuit held in Stripling v. Jordan Production Co., LLC, a defendant’s single act is sufficient to confér personal jurisdiction “so long as the defendant ‘reasonably anticipate^] being haled into court’ in the forum state.”[39] So, while we agree that even a single act can give rise to minimum contacts, the nonresident defendant’s act still must be purposefully directed toward the forum state and the forum state’s exercise, of jurisdiction must be reasonably foreseeable.
¶ 40. Finally, in Miller v. Provident Advertising and Marketing, Inc., the Mississippi Court of Appeals found the exercise of personal jurisdiction over a nonresident paramour was proper because “the alleged sexual activity” took place in Mississippi.[40] The court stated:
*464 For whatever reason, Cladakis and Daly chose Mississippi for the site of their liaisons, this [c]ourt finds that decision constituted a purposeful availment to activities within the State for purposes of personal jurisdiction[41]
¶ 41. In its analysis, the Court of Appeals cited the Fifth Circuit’s decision in McFadin v. Gerber, where the Fifth Circuit explained its test for specific jurisdiction:
We have articulated a three-step analysis for specific jurisdiction: “(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiffs cause of action arises out of or results from the defendant’s forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.”[42]
¶ 42. The case before us today fails McFadin’s first step. There is no evidence in the record whatsoever that Francesca “purposely directed [her] activities toward the forum state [Mississippi],” or that she “purposefully availed [herself] of the privilege of conducting activities” here. Nor is there any evidence in this case that the affair took place in Mississippi.
¶ 43. The dissent joins Paige in asserting that Francesca’s purposeful contact with Phillip — having an affair with him— established the constitutionally required minimum contacts with Mississippi, even though the affair did not take place in Mississippi, and Francesca did not know Phillip was from Mississippi, or that she was having any contact with Mississippi. Neither the dissent nor Paige cites any case to support this view, and it is readily apparent that this view conflicts with the language from the United States Supreme Court’s decisions cited above.
¶ 44. Paige correctly asserts that it is possible for a nonresident to be subject to a court’s personal jurisdiction without ever stepping foot in the forum state.[43] But that statement, standing alone, is not sufficient to justify the quantum leap to a finding that a nonresident who was unaware of making any contact with Mississippi is subject to the jurisdiction of our courts. We know of no case that suggests the possibility that a person who is unaware of making any contact with a forum state may nonetheless establish constitutionally required pwposeful, minimum contacts.
CONCLUSION
¶ 45. The complete absence of constitutionally required minimum contacts with Mississippi deprives our courts of jurisdiction over Francesca and this case. The record includes no evidence that Francesca created sufficient purposeful minimum contacts with Mississippi by having an affair with a man she did not know lived in Mississippi. Her calls and text messages to Phillip’s Memphis telephone number do not establish minimum contacts in Mississippi. A nonresident defendant must knowingly and purposefully establish minimum contacts with the forum state — in this case, Mississippi — such that the nonresident reasonably can expect to be haled *465 into court in that state. Here, that did not happen, so we reverse the circuit court’s denial of Francesca’s motion to dismiss for lack of personal jurisdiction, and we render judgment dismissing Paige’s complaint and this action for lack of personal jurisdiction over Francesca.
¶ 46. REVERSED AND RENDERED.
WALLER, C.J., KITCHENS, CHANDLER, KIÑG AND COLEMAN, JJ„ CONCUR. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J. LAMAR, J., NOT PARTICIPATING.

. Paige claims that Phillip's truck was registered in Mississippi and had a Mississippi license plate, but Francesca's attorney produced definitive evidence from the Mississippi Department of Motor Vehicles showing that neither of the Faucheuxes ever registered a Mazda truck in Mississippi.

. "MEM” is the International Air Transport Association airport code associated with Memphis International Airport.

. Kevlin Servs., Inc. v. Lexington State Bank, 46 F.3d 13, 14 (5th Cir.1995) (per curiam) (citing Wilson v. Belin, 20 F.3d 644, 647-48 (5th Cir.1994)) ("The plaintiff bears the burden of establishing the court’s personal jurisdiction over the nonresident defendant.”).

. Miss.Code Ann. § 13-3-57 (Rev.2012).

. See Dunn v. Yager, 58 So.3d 1171, 1185 (Miss.2011) (quoting Horne v. Mobile Area Water & Sewer Sys., 897 So.2d 972, 977 (Miss.2004)) ("For purposes of our long-arm statute, a tort is committed in Mississippi when the injury results in this State.”).

.Sorrells v. R & R Custom Coach Works, Inc., 636 So.2d 668, 675 (Miss.1994) (“The limitations of the Due Process Clause prevented utilization of the Mississippi Long-Arm Statute to gain personal jurisdiction over a defendant foreign corporation that had not purposefully directed its activities towards Mississippi.”).

. U.S. Const, amend. XIV, § 1 (“[N]or shall any State deprive any person of life, liberty, or property, without due process of law ....”); see also Horne, 897 So.2d at 976 (citing McDaniel v. Ritter, 556 So.2d 303, 307 (Miss.1989)) ("[T]he second question is whether the defendant is amendable to suit in Mississippi consistent with the due process clauses of the federal constitution, and, as well, this state’s constitution.”).

. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

. U.S. Const, art. VI, cl. 2 (“The Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the. Constitution or Laws of any State to the Contrary notwithstanding.”); Goodyear Dunlop Tires Operations, S.A. v. Brown, - U.S. -, 131 S.Ct. 2846, 2850, 180 L.Ed.2d 796 (2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) (“A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause.”).

. Int’l Shoe Co., 326 U.S. at 316, 66 S.Ct. 154 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (quoting Int’l Shoe Co., 326 U.S. at 320, 66 S.Ct. 154).

. Burger King Corp., 471 U.S. at 476, 105 S.Ct. 2174 (quoting Int’l Shoe Co., 326 U.S. at 320, 66 S.Ct. 154) (emphasis added).

.Burger King Corp., 471 U.S. at 474, 105 S.Ct. 2174 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). See also Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 871-72 (5th Cir.2000) (quoting Rustan Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 416 (5th Cir.1993); World-Wide Volkswagen Corp., 444 U.S. at 297, 100 S.Ct. 559) ("Moreover, a defendant’s single act can be sufficient to confer personal jurisdiction ‘if that act gives rise to the claim being asserted,’ so long as the defendant ‘reasonably anticipate[s] being haled into court’ in the forum state.”).

. Walden v. Fiore, - U.S. -, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014) (citing Int’l Shoe Co., 326 U.S. at 319, 66 S.Ct. 154).

. Burger King Corp., 471 U.S. at 474, 105 S.Ct. 2174.

. Goodyear Dunlop Tires Operations, S.A., 131 S.Ct. at 2853.

. World-Wide Volkswagen Corp., 444 U.S. at 294, 100 S.Ct. 559 (citing Hanson v. Denckla, 357 U.S. 235, 251, 254, 78 S.Ct. 1228, 1238, 1240, 2 L.Ed.2d 1283 (1958)).

. World-Wide Volkswagen Corp., 444 U.S. at 295, 100 S.Ct. 559 (emphasis added).

. Burger King Corp., 471 U.S. at 474, 105 S.Ct. 2174 (quoting Int'l Shoe Co., 326 U.S. at 316, 66 S.Ct. 154).

. Burger King Corp., 471 U.S. at 474, 105 S.Ct. 2174 (citing World-Wide Volkswagen Corp., 444 U.S. at 295, 100 S.Ct. 559) (internal footnote omitted).

. Walden, 134 S.Ct. at 1123 (citing Rush v. Savchuk, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)).

. Walden, 134 S.Ct. at 1121-22 (internal citations and footnotes omitted).

. Id., at 1125 (internal citations omitted).

. Burger King Corp., 471 U.S. at 474, 105 S.Ct. 2174 (quoting World-Wide Volkswagen Corp., 444 U.S. at 295, 100 S.Ct. 559).

.Burger King Corp., 471 U.S. at 474, 105 S.Ct. 2174 (citing Int’l Shoe Co., 326 U.S. at 316, 66 S.Ct. 154).

. Knight v. Woodfield, 50 So.3d 995 (Miss.2011).

. Id. at 997, 1000.

. Id. at 999 (quoting Horne, 897 So.2d at 979).

. Knight, 50 So.3d at 1000.

. Id. at 997.

. Thomas v. Ship, 876 F.Supp.2d 788, 797 (S.D.Miss.2012); Bailey v. Stanford, No. 3:11— cv-00040-NBB-SSA, 2012 WL 569020 (N.D.Miss. Feb. 21, 2012).

. Thomas, 876 F.Supp.2d at 797.

. Id. at 796.

. Id. at 796-97.

. Id. at 797.

. Bailey, 2012 WL 569020, at *3 ("The defendant’s brief concedes that the defendant purposefully directed communications to James in Mississippi....”).

. Id. at ⅜6 (citation omitted in original) (quoting David M. Cotter, The Well-Deserved Erosion of the Tort of Alienation of Affections and the Potential Liability of Nonresident Defendants, 15 Divorce Litig. 204 (2003)).

. Bailey, 2012 WL 569020, at *7 (emphasis added).

. Stripling, 234 F.3d at 872 (quoting WorldWide Volkswagen Corp., 444 U.S. at 297, 100 S.Ct. 559).

. Miller v. Provident Adver. & Mktg., Inc., 155 So.3d 181, 193 (Miss.Ct.App.2014).

. Id. at 193.

. McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir.2009) (quoting Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir.2006)) (emphasis added).

.Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir.1990) (citing Burger King Corp., 471 U.S. at 476, 105 S.Ct. 2174).