# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-00629-SCT

*MELISSA DILWORTH AND THOMAS TRAE DILWORTH*

*v.*

*LG CHEM, LTD., AND LG CHEM AMERICA, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/12/2021 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM, SR. |
| TRIAL COURT ATTORNEYS: | WILLIAM R. SUTTON |
| | RYAN MICHAEL SKERTICH |
| | JAMES HAGGARD BOLIN |
| | WILLIAM POLK THOMAS |
| | LEE MORGAN PEACOCKE |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM R. SUTTON |
| | RYAN MICHAEL SKERTICH |
| | CELENE H. HUMPHRIES |
| | THOMAS J. SEIDER |
| ATTORNEYS FOR APPELLEES: | LEE MORGAN PEACOCKE |
| | SEAN M. HIGGINS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 10/13/2022 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case presents the question of whether Mississippi courts have personal jurisdiction over a South Korean battery manufacturer whose goods are in the stream of commerce in Mississippi. The Mississippi Plaintiff, Melissa Dilworth, was seriously injured when one of LG Chem Ltd.'s (LG Chem) lithium-ion batteries exploded in her vaping

device.[1] LG Chem and its Georgia-based subsidiary, LG Chem America, argued successfully before the circuit court that they lacked sufficient minimum contacts with Mississippi to satisfy the constitutional standard for exercising personal jurisdiction over nonresident defendants. On appeal, we find that manufacturer LG Chem purposefully availed itself of the market for its product in Mississippi such that the exercise of specific personal jurisdiction comports with due process principles. We find also that dismissal of subsidiary LG Chem America was premature, and we reverse and remand for jurisdictional discovery.

**FACTS**

¶2.     The Dilworths alleged that in 2018 Melissa Dilworth was walking her dog when an LG 18650 lithium-ion battery exploded in the vaping device that was in her pocket. Mrs. Dilworth suffered second-and third-degree burns across her groin, legs, hands, and fingers, and she remained at a dedicated burn center for more than a week of treatment. The battery had been purchased individually at a local Mississippi vape store and was accompanied by no warnings or instructions.

¶3.     The Dilworths sued multiple defendants, including battery manufacturer LG Chem and its Georgia-based subsidiary, LG Chem America.[2] The complaint alleged that LG Chem has "conducted substantial, ongoing business in this state" by "manufacturing[,] designing, testing, marketing, certifying, supplying, selling, importing and distributing goods, including

---

[1] Her husband, Thomas Dilworth, has joined this litigation with a derivative claim for loss of consortium.

[2] Other defendants named in the complaint include the vape store, the store's suppliers, and the manufacturer of the vaping device.

2

. . . the brown LG 18650 batteries at issue, with the actual knowledge and/or reasonable expectation that they will be used in this state and which are in fact used in this state," and that LG Chem has "continually targeted the United States of America, and the State of Mississippi specifically, via its distribution chain . . . ." The complaint alleged also that LG Chem has "received substantial compensation from the sale of its products in this state," and that its "contacts with Mississippi principally relate to the placement of electronic devices, including lithium ion batteries, into the stream of commerce."

¶4. LG Chem and LG Chem America filed motions to dismiss for lack of personal jurisdiction. LG Chem provided an affidavit from a sales employee averring that the company is not registered to do business in Mississippi, does not own or lease property here, and does not have an office or employees here. The affidavit asserts that LG Chem's products are manufactured for "use in specific applications by sophisticated companies," that its products are not intended or authorized for "sale to individual consumers as standalone batteries," and that it does not sell lithium-ion cells to distributors "known to LG Chem to be engaged in the business of selling 18650 lithium-ion cells directly to consumers for use as standalone batteries." Subsidiary LG Chem America provided an affidavit averring that its activity in Mississippi relates to petrochemical products.

¶5. The Dilworths opposed the motion to dismiss, noting that LG Chem did not controvert the essential jurisdictional allegations that it does business in the state by placing its goods into the stream of commerce with the expectation that they will be sold in Mississippi. Manufactured products containing LG Chem batteries are available for sale in Mississippi.

3

Those products include golf carts, electric scooters, power tools, smartphones, tablets, and laptops. The Dilworths noted also that, in unrelated litigation in 2015, LG Chem indicated that it "sells in the order of $0.76 million every day attributable to the . . . batteries sold or imported into the United States" and that they "have yearly revenue of $278 million attributable to the . . . batteries sold or imported into the United States." *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-cv-00043-MOK-DCK, 2015 WL 2412467, at *24 (W.D.N.C. May 21, 2015). LG Chem did not controvert the complaint's allegation that it knew its batteries were "regularly purchased for and used as power sources for individual applications such as personal vaping devices." The Dilworths argued that LG Chem's assertion that the batteries are not intended or authorized for standalone use is not a jurisdictional argument, but rather a merits argument that may be appropriate at trial.

¶6.     Following hearings on the motions, the circuit court denied the Dilworths' request for further jurisdictional discovery and dismissed LG Chem and LG Chem America from the suit due to lack of specific personal jurisdiction. The court entered an order certifying as final the judgment for LG Chem and LG Chem America pursuant to Mississippi Rule of Civil Procedure 54(h).  The Dilworths appeal.

## STANDARD OF REVIEW

¶7.     "This Court employs *de novo* review of jurisdictional questions." *Sorrells v. R & R Custom Coach Works, Inc.*, 636 So. 2d 668, 270 (Miss. 1994). In Mississippi, the plaintiff bears the burden of establishing the existence of personal jurisdiction over a nonresident defendant. *Nordness v. Faucheux*, 170 So. 3d 454, 457 (Miss. 2015). On a motion to

dismiss, the allegations of the complaint must be taken as true except as controverted by the defendant's affidavits. *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 988 (Miss. 2004); *Miller v. Provident Advert. and Mktg., Inc.*, 155 So. 3d 181, 188 (Miss. Ct. App. 2014), *cert. denied*, 154 So. 3d 33 (Miss. 2015) (table). In the absence of a pretrial evidentiary hearing, only a *prima facie* showing of personal jurisdiction is required. *Hogrobrooks v. Progressive Direct*, 858 So. 2d 913, 919 (Miss. Ct. App. 2003).

## DISCUSSION

I.    **Whether the exercise of personal jurisdiction over LG Chem comports with due process.**

¶8.    We conduct a two-step analysis to determine whether personal jurisdiction over a nonresident defendant is proper. *Knight v. Woodfield*, 50 So. 3d 995, 998 (Miss. 2011). First, we ask whether the nonresident defendant can be sued in Mississippi under the state's long-arm statute. *Id.* If so, we ask whether the exercise of jurisdiction complies with the Fourteenth Amendment's Due Process Clause. *Id.* at 998. Here, the application of Mississippi's long-arm statute[3] is not in dispute. Even when jurisdiction under the long-arm statute is appropriate, however, the plaintiff must demonstrate that the nonresident defendant has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278, 132 (1941)). Due process "does not contemplate that a state may make binding a judgment against [a] . . . corporate defendant

_____

[3] *See* Miss. Code Ann. § 13-3-57 (Rev. 2019).

with which the state has no contacts, ties, or relations." *Id.* at 319. "But to the extent that a corporation exercises the privilege of conducting activities within a state," "[t]he exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit . . . can . . . hardly be said to be undue." *Id.*

¶9.     To make a *prima facie* case for the exercise of specific jurisdiction, the following test applies:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Fitch v. Wine Express Inc.*, 297 So. 3d 224, 230 (Miss. 2020) (quoting *Nordness*, 170 So. 3d at 464). The defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum state'. . . The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025, 209 L. Ed. 2d 225 (2021) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 25, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). The contacts "must show that the defendant deliberately 'reached out beyond' its home–by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)).

¶10.    "[T]he foreseeability that is critical to due process analysis is not the mere likelihood

6

that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Fundamentally,

> When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there . . . . Hence if the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the *efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product* in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. *The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.*

*Id.* at 297-98 (emphasis added) (citations omitted). A manufacturer "may purposely avail itself of the protection of a state's laws-and thereby will subject itself to personal jurisdiction-by sending its goods rather than its agents into the forum." ***Christopher v. DePuy Orthopaedics, Inc.***, 888 F.3d 753, 778-79 (5th Cir. 2018) (quoting ***J. McIntyre Mach., Ltd. v Nicastro***, 564 U.S. 873, 822, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011)).

¶11.　We find that LG Chem has purposefully availed itself of the market for lithium-ion batteries in Mississippi such that the exercise of personal jurisdiction is fundamentally reasonable and fair. At oral argument for this appeal, LG Chem acknowledged that its position is that it cannot be sued in *any* state in the United States of America over the unauthorized standalone use of its batteries in vaping devices, despite the fact that millions of those batteries (resulting in millions of dollars in profits) have inundated the United States

market. This position stretches the intended function of due process protection too far. Given LG Chem's effort to serve (directly or indirectly) the market for lithium ion batteries in Mississippi, the availability for sale in Mississippi of the battery that injured Mrs. Dilworth was related to LG Chem's activities in the state and was not a random, isolated, or fortuitous occurrence. And significantly–for purposes of establishing a *prima facie* case sufficient to withstand summary judgment–LG Chem did not controvert the allegations of the complaint that it placed its product into the stream of commerce with the expectation that it would be sold in Mississippi.

¶12.    Litigation related specifically to 18650 lithium-ion batteries exploding in vape pens (and other products) is emerging around the country. In 2021, the Georgia Court of Appeals found that Georgia had personal jurisdiction over LG Chem in a case in which a plaintiff was injured when an LG Chem 18650 lithium-ion battery exploded in the plaintiff's vape pen.[4] *LG Chem, Ltd. v. Lemmerman*, 863 S.E.2d 514 (Ga. Ct. App. 2021). The individual battery was purchased at a vape shop for rechargeable use in "an electronic cigarette vaporizer without any instructions, warnings, or information." *Id.* at 518. LG Chem "was not registered to do business in Georgia, did not have a registered agent for service of process in Georgia, did not own or lease any real property in Georgia, and did not have any offices or employees in Georgia." *Id.* at 519. But LG Chem did engage "in regular, continuous, and systematic business in Georgia; transacted substantial business in Georgia; solicited business in Georgia;

---

[4] Similar to the present case, the battery exploded while in the plaintiff's pocket. *Lemmerman*, 863 S.E.2d at 518. Mr. Lemmerman suffered permanent injuries and disfigurement to his legs, scrotum, and right hand. *Id.*

targeted marketing specific to Georgia; had a regular plan for the distribution of its products in Georgia; and derived millions of dollars a year from sales of its products in Georgia." *Id.* at 518. Similar to the case before us, LG Chem argued that those sales were for "use in specific applications by sophisticated companies" and that it "never authorized any distributor, wholesaler, retailer, or re-seller to advertise, sell or distribute any lithium-ion [batteries] for use by individual consumers as standalone, removable, rechargeable batteries in electronic cigarette or vaping devices." *Id.* at 519. But the court still found that LG Chem "purposefully availed" itself of the forum state by targeting distribution of the product in the state, given "the uncontroverted factual allegations . . . that reflect that LG Chem 'does substantial business' in Georgia and 'seeks to serve the market for [lithium-ion batteries] in Georgia.'" *Id.* at 523. The court found that, for the purpose of satisfying due process expectations, LG Chem's exploitation of the general market for batteries in Georgia was sufficient regardless of whether the batteries were being used as intended or authorized. *Id.* at 523.

¶13.    The case before us is substantially comparable to *Lemmerman*, including LG Chem's not controverting the complaint's essential jurisdictional allegations that it placed its goods in the stream of commerce with the expectation that they would be sold in Mississippi. *Lemmerman* rejected LG Chem's argument that minimum contacts could not be established because the product reached the plaintiff through third-party distributors unauthorized to sell the batteries for individual use. *Lemmerman*, 863 S.E.2d at 523. The court acknowledged that it "is true that the unilateral activity of the plaintiff or a third party cannot, without more,

9

'satisfy the requirement of contact with the forum State' because it is the activities of the nonresident defendant that must create the 'substantial connection with the forum State.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "But where the nonresident defendant 'deliberately reached out beyond its home . . . by . . . exploiting a market in the forum State," the defendant can be said to have purposefully availed itself of the privilege of conducting activities within that State." *Lemmerman*, 863 S.E.2d 523.

¶14.    LG Chem relies heavily on the position asserted in its affidavit that its batteries are not authorized for standalone use, and that it does not sell products to distributors known to them to sell the batteries directly to consumers for standalone use. While the consumer's purported misuse of the product may be a valid merits defense for LG Chem to raise as the case proceeds in circuit court, it is not an argument that defeats a *prima facie* case of personal jurisdiction in a forum in which the defendant has not controverted that it does substantial business in the forum that is related to the product. For a specific jurisdiction analysis, the placement of the product in the marketplace is the relevant focus, not how the injured plaintiff used the subject product. In *Ford Motor*, 141 S. Ct. 1017, the United States Supreme Court held recently that "[w]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.* at 1022. The Court firmly rejected the argument that a manufacturer's purposeful availment of a forum state's markets requires a *causal* connection to the plaintiff's claim. *Id.* at 1026. Ford's substantial business in Montana and Minnesota

10

included advertising, selling, and servicing the vehicle models that allegedly were defective. *Id.* at 1022. In rejecting the argument that the relationship between the contacts and the claim must be causal, the Court noted that the test for minimum contacts requires that the claim must "arise out of *or relate to* the defendant's contacts' with the forum." *Id.* at 1025 (quoting *Bristol-Myer Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017) (quoting *Daimler v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)). Therefore it was irrelevant whether the particular vehicles involved in the accident had been purchased, designed, or manufactured in the forum state. *Id*.

¶15.    Construing *Ford*, the *Lemmerman* court held that LG Chem's deliberate exploitation of the general market in Georgia for lithium-ion batteries was sufficient to satisfy the "arises out of or relates to" prong for establishing minimum contacts. *Lemmerman*, 863 S.E.2d at 523. "The [United States Supreme Court] emphasized that its formulation of the test 'does not mean anything goes,'[], but that where a product manufacturer 'serves a market for a product in the forum State and the product malfunctions there,' specific jurisdiction exists over the manufacturer." *Id.* at 524 (quoting *Ford*, 141 S. Ct. at 1027). And instead of being a consideration that undermines specific personal jurisdiction, unforeseen misuse of a product "goes to the substantive merits of a products liability action and can be addressed in that context." *Lemmerman*, 863 S.E.2d 514 at 524.[5][6]

---

[5] We note that the circuit court here granted LG Chem's motion to dismiss only shortly after *Ford* was decided and several months before *Lemmerman*.

[6] *But see Miller v. LG Chem, Ltd.*, 868 S.E.2d 896 (N.C. App 2022) (declining to find specific personal jurisdiction over LG Chem related to vape pen battery explosion); *see also LG Chem, Ltd. v. Sup. Ct. of San Diego Cnty.*, 295 Cal. Rptr. 3d 661 (Cal. Ct. App. 2022)

¶16. We concur with *Lemmerman*'s application of *Ford* to LG Chem's activities to find that the contacts "relate to" the Dilworths' claims. We agree also that the purposeful availment/minimum contacts requirement is met under either the stream of commerce or the stream of commerce plus test. *Lemmerman*, 863 S.E.2d at 522. But we note that application of the stream of commerce analysis is consistent with the approach currently maintained by the United States Court of Appeals for the Fifth Circuit. *See Ainsworth v. Moffett Eng'g*, 716 F.3d 174 (5th Cir. 2013). In *Ainsworth*, the Fifth Circuit found personal jurisdiction proper over an Irish forklift manufacturer that had sold 203 forklifts to customers in Mississippi over the course of a decade. *Id.* at 178. The court stated "this Circuit has consistently followed a 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *Id.* at 176 (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987). We acknowledge, as the Fifth Circuit has, that pluralities of the United States Supreme Court have produced an alternate test that requires more targeted behavior toward the forum beyond the mere expectation that the goods will be sold there. *See Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal.*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); *Nicastro*, 564 U.S. 873. But, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices 'the holding of the Court may be viewed as that position taken by those Members

---

(declining to find jurisdiction over LG Chem on facts before the court but noting *Lemmerman* has distinguishable facts and procedural context).

12

who concurred in the judgments on the narrowest grounds.'" ***Ainsworth***, 716 F.3d at 178 (alteration in original) (internal quotation marks omitted) (quoting ***Marks v. United States***, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977). In the absence of the United States Supreme Court's adopting a more restrictive rationale, we concur with the Fifth Circuit's continued application of the traditional stream of commerce test.

¶17.    LG Chem directs our attention to ***Sorrells***, 636 So. 2d 668. In ***Sorrells***, this Court found that a motor home manufacturer lacked sufficient minimum contacts with Mississippi to satisfy due process when the Mississippi plaintiff had purchased a motor home in Colorado that had been manufactured in California. ***Id.*** at 669. The manufacturer's contacts with Mississippi "consisted of: 1) manufacturing the motor home which the Sorrells[es] purchased and drove to Mississippi; and 2) correspondence with the Sorrells[es] regarding the warranty provisions and obligations covering the motor home." ***Id.*** at 673. Notably, the record was "devoid of *any* activity by R & R indicative of an intent or purpose by R & R to serve the Mississippi Market. Consequently, R & R did not purposefully direct any action toward Mississippi[.]" ***Id.*** at 675. ***Sorrells*** demonstrated a situation of "mere likelihood" that a product would enter a state, as opposed to efforts by the manufacturer to serve a state's market for the product. ***World-Wide Volkswagen Corp.***, 444 U.S. at 297. But here, unlike in ***Sorrells***, the record developed by the plaintiffs at the time of the ruling on the motion to dismiss supports that LG Chem *did* engage in activity "indicative of an intent or purpose to serve" the Mississippi Market for lithium-ion batteries. Unlike the isolated presence of a motor home in the state, publicly available data provided in the Dillworths' Opposition to the

13

Defendant's Motion to Dismiss indicate that a Mississippi resident can go to a local Home Depot store and purchase power tools containing LG 18650 batteries. Golf carts and laptops with LG 18650 batteries are available for sale in Mississippi. Standalone batteries are available for individual purchase online from retailers such as Walmart. Unlike the mobile home manufacturer in *Sorrells*, LG Chem intentionally "serves the market" for its product in Mississippi.

¶18. Once minimum contacts have been established, the final question to ask is whether the maintenance of the suit offends traditional notions of "fair play and substantial justice." *Knight*, 50 So. 3d at 1000 (internal quotation marks omitted) (quoting *Burger King Corp.*, 471 U.S. at 476). The defendant bears the burden at this stage. *Miller*, 155 So. 3d at 193 (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2014). The analysis includes a consideration of "the forum state's interest in adjudicating the dispute" and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *McFadin*, 587 F.3d at 579; *Joshua Props., LLC, v. D1 Sports Holdings*, 130 So. 3d 1089, 1095 (Miss. 2014). Here, a Mississippi plaintiff was injured in Mississippi by a product she had purchased in Mississippi. The state's interest in adjudicating the dispute is high. LG Chem's position is that no state is an appropriate forum, and that the suit should be brought in South Korea, if anywhere. According to the Dilworths, forty-four lawsuits, and counting, are proceeding around the United States related to exploding LG batteries. LG Chem deliberately ships millions of batteries to the United States market every year, reaping millions of dollars in profit. As the Dilworths argue in their brief, at some point LG Chem

14

has to stop acting surprised. Requiring LG Chem to defend a suit in Mississippi does not offend fair play or substantial justice.

## II. Whether jurisdictional discovery is proper concerning LG Chem America.

¶19. On appeal, the Dilworths argue that further jurisdictional discovery is warranted with regard to manufacturer LG Chem's Georgia-based subsidiary, LG Chem America. A district court's decision to deny jurisdictional discovery is reviewed for abuse of discretion. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003). "The decision not to permit depositions on a motion to dismiss for lack of personal jurisdiction is specifically one for the trial court's discretion, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Ramsey v. Auburn Univ.*, 191 So. 3d 102, 112 (Miss. 2016) (internal quotation marks omitted) (quoting *Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982). Erroneous conclusions of law amount to an abuse of discretion. *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020).

¶20. As for subsidiary LG Chem America's minimum contacts with Mississippi, the record before the circuit court was underdeveloped at the time the motions to dismiss were decided. LG Chem America's role relates to distribution and advertising, and it acknowledged in its affidavit that it does have business in Mississippi related to advertising and distributing petrochemical products. Documents provided by the Dillworths indicate that LG Chem America has shipped products to Mississippi. LG Chem America has been actively registered to do business in Tennessee since 2013. Cases from other jurisdictions suggest that in other

states, LG Chem America's business relates directly to lithium-ion cells.[7] The amount of business LG Chem America conducts in Mississippi and whether it relates to the Dilworths' claims is far from clear.

¶21. We note also that the circuit court decided these motions without the benefit of an opinion from this Court addressing ***Ford***, which handed down the same year these motions were granted. The circuit court relied also on an interpretation of ***Sorrells*** that departed from the broader stream of commerce approach that we adopt today. We find, therefore, that the dismissal of LG Chem America was premature and we reverse and remand for jurisdictional discovery.

## CONCLUSION

¶22. Personal jurisdiction over defendant LG Chem comports with due process principles. We therefore reverse the trial court's grant of LG Chem's motion to dismiss. The dismissal of defendant LG Chem America was premature, and with regard to that defendant we therefore reverse and remand for jurisdictional discovery.

¶23. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

---

[7] *See **Miller***, 281 N.C. App. 531; *see also **In re Am. River Transp. Co. LLC***, 533 F. Supp. 3d 355, 363 (E.D. La. 2021) (permitting further jurisdictional discovery against LG Chem due to insufficiency of affidavits to provide enough supporting facts to rule on the motion to dismiss).